May it please the court, my name is David Fitzgerald, I'm appearing for the appellant Richard Jefferson. The court should reverse and remand in this case. The district court erred in granting summary judgment in favor of Alliance. The district court abused its discretion in declining to modify the scheduling order and in denying Jefferson leave to amend. The district court erred in dismissing Jefferson's counterclaims. Addressing the summary judgment issue, Alliance obtained summary judgment on grounds that it should have been judicially stopped from asserting. The judge who was in the best position to decide whether, I can't remember, is it the judge he or she? It's a gentleman your honor. Yeah, the district judge was in the best position to rely upon the contrary position that the bank had taken and the judge said no I didn't, so why isn't that the end of the story? Your honor, the record on the motion, we've called it Jefferson's Rule 12e and 12f motion, which is the basis for the judicial estoppel argument, the record, the opinion in order that was reflected a degree of reliance on what the arguments of Alliance Bank were. So the record itself reflects that the district court agreed that there was one line of credit theory. It reflects that Alliance loaned money to Jefferson. It reflects other matters that were put forth in the complaint and in the response to the 12e and f motion. So my response to that is that the judge's own cleared it up in rejecting your judicial estoppel argument by saying, I'm not saying he was directing it to you personally, but he just said no. Even if the bank had not taken that position, I'm getting the construction messed up, but the judge himself basically said it wouldn't have made any difference to me what position they took on that issue because the outcome would have been the same. Your honor, it goes back to the complaint. The complaint suggests that there was one line of credit initiated in roughly 2004 and that it was amended 10 or 12 times until 2014. The complaint alleges that it was a breach of contract case, simple, direct, straightforward, doesn't refer to the third party defendant, Kritza. So the argument, we moved to clean up the complaint. What contract is Alliance suing on? We're trying to pin it down. My client denies that he signed all of these documents. Let's focus on what contract there is. Alliance's response was, it's all clear. Perfectly clear that this is one contract and it's been amended a number of times. Jefferson signed the documents. It's all very simple and straightforward. That's not this case. It wasn't straightforward in the least. So the judge, the district court judge at that pleading phase really didn't narrow down the issues or focus on what contract was in play. And I guess I would say that the record speaks for itself and I can't get to it. How does that prejudice you? The argument that he denied the 12E and 12B 12F motion and adopted the Alliance positions, it prejudices because we were, summary judgment was granted against Jefferson on theories that were never, theories and facts that were never pled. But there was one contract. It was the contract that he entered into so that they wouldn't move forward. Why isn't that a sufficient contract upon which the judge can rely? Okay. The forbearance contract. Several reasons, Your Honor. First, we argue that forgeries cannot be ratified. That's a separate issue that you may have difficulty with, but go to the next one. State law is involved. Yeah, absolutely. State law question, Your Honor. The next issue is that ratification cannot be obtained by misrepresentation or the like. So in this case, Alliance represented that there was one line of credit, started in 2004, amended year after year after year until 2013. That's in this 122013 letter or what we've referred to as the forbearance letter, or excuse me, what Alliance has referred to as the forbearance letter. It's not true. There were at least three lines of credit. Jefferson knew of the first, knew of the first one, but didn't know the loan number on the first one. Well, hang on. Tell me if I'm wrong in thinking this. I understood that at the time your client signed the forbearance, it's not a letter, it's actually an agreement. There's consideration exchange and the like. At the time he signed the forbearance agreement, the bank had provided every single piece of paper relevant to this, and he could well have figured out on his own that there were multiple lines of credit. Your Honor, I don't think the bank did provide every single piece of paper. For instance, it didn't provide the payoff statements or the paid note, the note stamp paid for the original line of credit after it was subsequently amended. Did it provide him with documentation from which he could have figured out that, in fact, there were these multiple lines of credit, as you've described? They provided him with various bank statements, many bank statements, but they didn't provide him with two of the bank statements. Well, can you just answer my question? Did they provide him with enough documentation from which he could figure out that rather than there being one, there, in fact, were multiple lines of credit? I thought the answer was yes. I mean, I don't – it's possible that he could have figured it out. He had counsel, right? He had counsel, Your Honor. He was just on his own. So when you say, well, he didn't know, I guess to me that's kind of irrelevant. He had the advice of counsel. Counsel received from the bank, as I understand it, enough documentation certainly from which that person could have figured out that contrary to the bank's representation about there being just one, there were, in fact, multiple lines of credit. So I don't see where that gets you anywhere. Your Honor, they didn't provide documents showing, for instance, that the 9169 loan, the last one, was clearly a new loan and not an amendment to the prior two lines of credit. Our record is full of documents that they provided after the pleading phase and even after the deadline to modify the scheduling order. They didn't provide – this is a series of transactions that occurred over 10 years. I guess let me ask you this. I don't know that any of this matters anyway, frankly, because the letter itself reflects the fact that your client was telling the bank that all of this was forged. I didn't sign any of this. And as a matter of fact, I therefore don't even think I'm responsible for paying it back. The letter already reflects that that's the position your client was taking, right? So he did know everything he needed to, it seems to me, to make an informed decision about whether to accept this agreement. Your Honor, I don't think Jefferson knew that he was not liable on the loan if that was the question. But he took that position in the letter. I mean, at least the bank is reflecting back to him, listen, we understand that you're claiming that all of this was forged, that you never authorized any of these lines of credit or whatever, any of the extensions and the like, right? And that this money that was taken out in your name, you never got somebody else basically engaging in a massive fraud to get it. And we understand that you're taking the position that therefore you shouldn't have to pay it back. Our position is, sorry, we can't give you, you know, we're not going to accede to that, but we will give you a little bit more time to pay it back if you are willing to accept the terms of this agreement, one of which is that you are going to now accept liability for this money, notwithstanding the position you've taken that everything was forged, right? So what else did he need to know? That's when you say that, well, he entered this on the basis of a misrepresentation. I don't, what misrepresentation? That the, that the loan was one continuous loan is not. So what? That's what I'm saying. He is saying one loan, multiple loans, whatever. I never authorized it. It was all forged. The standard, Your Honor, is to have full and actual knowledge of all material facts with respect to each of the transactions in question. The, the letter is suggestive of there being one transaction in question. That's not the case. There were at least three transactions in questions and probably many more. All the withdrawals, the ups and downs. Jefferson did. But that's, he knew all that when he signed the agreement, or his lawyer knew all that. He wasn't provided all of the documents, Your Honor. There were bank statements that were missing. There were, there were paid promissory notes that were, that were not provided. There was a forged power. There was a power of attorney that was supposedly relied on in support of all this. It turns out it was forged. Jefferson, that wasn't part of the, the complaints. It was raised later, later, later by Alliance. And it was a basis upon which it said that all these transactions were authorized. Jefferson didn't know all the material facts when he executed that document. Oh, by the way, I don't know what difference all that makes. It's just what I've ever said. But let me go back to another issue I forgot to mention earlier. Now you've invoked a judicial estoppel, right? Earlier in the case because of differences the bank has taken in the complaint and later in the, later on in the litigation. I've never seen a case of judicial estoppel being invoked with respect to representations made within the same case. It's always invoked. In other words, a lawyer makes a representation in case number one and in case number two, and it's resolved in his favor on the basis of that representation. Case number two, he makes an entirely different representation, right? But I don't know of any case that invokes judicial estoppel to govern representations made within the same case before the same judge. Can you cite me a case to that effect? I think it's Hamilton, Your Honor. Hamilton? Actually, Hamilton, what I think Hamilton says is that it's not only applied in the same case, but it also can be applied when there are multiple cases. So I guess by implication it answers your question. I'm not sure if that was the issue in the case, but it certainly, the doctrine does apply inside of the same case. What court decided that? Ninth Circuit, Your Honor. Well, that's nice that you got that, but we need some Arizona law. The Arizona law applies. Your Honor, I think the question of judicial estoppel in a Federal proceeding, even in a diversity case, is governed by Federal law. It's a procedural question. You may be right. So, and the judge raised that, but I think it's Milton, but I could be mistaken. But it's a Federal question. It's a Federal issue. It's governed by Federal law, procedural law. Your Honor. I have one more question, and we'll make sure we give you some time for rebuttal. Thank you, Your Honor. So you alluded to the ratification issue. Yes, Your Honor. And I guess my, I want to hear your response to this. My thought was that we don't need to grapple with that at all, whether, I think, tell me if I'm getting the framing right, whether a non-negotiable instrument can be, a forged non-negotiable instrument can be ratified under Arizona law? Is that the? Yeah. The position is that under Arizona law and the weight of common law authority, a non-negotiable instrument cannot be ratified. Okay. And my thought was that why do we need to grapple with that in any way? I know you guys fought that out in the district court, and the district court ruled on that and made a prediction as to what the Arizona Supreme Court would decide. But it doesn't seem to me that issue is before us at all. The bank has sued for breach of the forbearance agreement. That's a totally separate contract, which, as I said, for which there was adequate consideration on both sides. So it doesn't matter whether. The forbearance agreement is what they based the ratification on. The underlying documents are the lines of credit documents, the loan documents, et cetera. Those are non-negotiable instruments that cannot be ratified. Right. They're not suing for breach of any of those underlying agreements. They have a totally separate agreement that I conceive of it, but don't talk me out of this if I'm wrong. I conceive of this as an agreement that basically resolves a piece of impending litigation before any lawsuits have been filed. And they're saying in exchange for our giving you more time to pay this back, you've basically agreed for whatever reason to accept liability. I mean, I think they acknowledge that you could have fought us on this, right, and said I'm not paying you back a dime because I never authorized any of that money to be taken out. But in this agreement, your client gave up the right to continue to fight that in exchange for getting more time to pay it back. And that's a totally separate agreement that has nothing to do with ratification. A few points on that, Your Honor. In the briefing and the motion for summary judgment, and I think in the appeal, it's clear that you can't, you, Jefferson didn't get any consideration. Jefferson didn't owe this money. And forbearance, an agreement to forbear that's based on documents known to be invalid is not valid consideration. No, no, no, no. That's what I'm saying. Tell me why I'm not looking at this right. This is a resolution pre-lawsuit of litigation, right? I mean, I recognize that nobody had sued each other at that point. But both sides are recognizing that you have a suit you could bring against me. I have a suit I could bring against you, right? And the bank says we are not going to sue you today, which we could because that money was due from our standpoint two weeks ago or three weeks ago. We're not going to sue you today. We're going to give you another, what was it, a month to pay this? And I think, like, interest-free, right? We're not going to even have interest accrued during that period. But in exchange, you are going to give up your right to fight us on this. And that seems to me the mutual exchange of consideration. I think in the underlying briefing, there was no release. The bank initially, in their first draft of this piece of paper, asked for some sort of waiver and release by Jefferson. His counsel at the time, which was pre-litigation, worked with counsel, and they deleted that sort of provision. So there was no knowing waiver or release. In fact, the bank took that language out of the forbearance document. And the bank sued upon, quote, unquote, the loan documents. So from 2004 through all these various amendments through the end. And in their definition of loan documents in the complaint, they make that clear. They're not suing merely on that 122013 letter. I thought that's all they were suing for breach of. Your Honor, not according to the complaint. The complaint refers to the loan documents, and it lists 20 different documents 20, I exaggerate. Let's hear from them, and then you'll have a chance to respond, okay? Thank you, Your Honor. Thank you very much. All right. Thanks. Let's hear from counsel for the bank. Maybe you can clear up right from the start which agreement you were suing for breach of. Thank you, Your Honor. Alliance, I'm John Clemency for Western Alliance Bank. I'm going to call them Alliance Bank. Please support. Alliance lawsuit. Can you tilt that microphone down just a little bit? Alliance's lawsuit was based on the loan agreements and the forbearance agreement. The loan agreements and what? And the forbearance agreement. And what Alliance alleged, and you have the complaint in the excerpt of the record, was that Mr. Jefferson was provided a $500,000 line of credit that started in 2004 and that he had available to him a line of credit year after year after year after year right through 2013. And that's exactly what happened. What I'd like to do, if I could, is maybe clear up one thing that Judge Tsushima asked about on the estoppel. And if I remember the question correctly, Judge Tsushima asked, isn't estoppel applied when you take different positions in two different cases or more? And each of the estoppel cases that were cited involved that exact situation, the New Hampshire versus Maine case where there were different positions taken over the years, the Marilyn Monroe case. And then the Hamilton case, that is the Ninth Circuit case that was cited, is a case where a Chapter 7 debtor did not disclose on his sworn bankruptcy schedules a cause of action against an insurance company. Years later, that same Chapter 7 debtor tried to bring a lawsuit against the insurance company, a separate piece of litigation, and the Ninth Circuit correctly concluded, no, you cannot take that because it is inconsistent with your sworn position in your bankruptcy. So I think Judge Tsushima was right. But frankly, the record below doesn't show any sort of misrepresentation or any sort of deception to the trial judge. The trial judge wasn't deceived, and frankly, Mr. Jefferson wasn't deceived about what was being sued on and what he received and what he ultimately, in December of 2013, agreed he was responsible to repay. And if I could, I'd like to just walk through some of the things in the record. And I think this goes to your question, Judge Watford. Didn't Mr. Jefferson and his lawyers receive everything they needed to do or everything they needed to make a determination of whether this was an obligation that Mr. Jefferson should indeed acknowledge was his and then repay? So what did he get? Mr. Jefferson got all of the loan documents that surround this transaction going all the way back to 2004. And by the way, the record shows that Mr. Jefferson acknowledged that that loan document was certainly allowed by him and his advisors. So we got every single loan document and each – Sir, let me just – Sure. When you say every single loan document, including enough documents for him to know that there were multiple lines of credit? Every single loan document, including extensions, including modifications, including brand-new loan numbers, okay? And if you go into the record, you will find that at ER 1864 to 1942. And, in fact, Mr. Jefferson received those things at the request of his lawyer when they were about to negotiate the forbearance agreement that was eventually signed in December 2013. Part of their diligence was, let's see the loan documents, okay? They were provided as soon as Mr. Jefferson asked for them. They showed that there were three different loan numbers. And so Mr. Jefferson knew that there were a series of different agreements. And whether one superseded the other or whatever, it is part of the historical line of credit that was provided to him. So he had those numbers. He also had, at Mr. Jefferson's request, Mr. Jefferson, actually the record shows, called the bank officer that was responsible for the loan at Alliance and said, send me all the loan statements for this line of credit that, you know, that apparently I'm responsible to repay. And you've heard your opponent say that, in fact, he did not receive all of the statements. That's what he's telling you. But what I'm suggesting is that Judge Sedwick below had all of that information, as do you, that shows beyond a shadow of a doubt, and, again, that's not the standard. It's is there a material issue of fact for summary judgment? And there's not. But if you look at ER 2412 to 2515, you will see, at Mr. Jefferson's request, the loan officer at Alliance sent to him loan statements dating back, well, loan statements from 2009 to 2013. Let me ask you a little different question about the forbearance agreement. Does or doesn't the forbearance agreement itself depend on what the law in Arizona is with respect to ratification of forged instruments? In other words, is the forbearance agreement itself a ratification of the prior forgeries, assuming there were forgeries? Isn't it? It is, Your Honor. So then doesn't the validity of the forbearance agreement depend on what the Arizona law of ratification is with respect to the kinds of agreements involved here? It would. And that was part of Judge Sedwick's decision. I'm not sure that's right. Let me hear you defend the issue that you otherwise could have won. I can certainly make an argument both ways. Well, what did Judge Sedwick say? Somebody would claim that I'm guilty of estoppel probably by doing that, but I'll take that risk. The reality is Mr. Jefferson signed a forbearance agreement, okay? And it's in the record, and I can find the site for you, but it's in the record multiple times. And it's very simple. It recites all of the various agreements that evidence the $500,000 loan that was made available to him. There's not an allegation in the claim, ironically, that says you signed every one of them. It says it's evidenced by these things. And at the end of the day, after we got some more stuff, and I'd like to just show you one or two more things that Mr. Jefferson got that really craters his three-loan theory. But let's focus on the ratification question. I'm sorry. You can get to that. But at the end, he signed an agreement in 2013 where he said, I owe you all this money, and here's what I'm going to do. I'm going to pay you $50,000 now, and I'm going to pay you the balance in January of 2014. Is that a stand-alone agreement? Sure. It has nothing to do with ratifying the underlying forgeries. He's just saying, I recognize that you could sue me, and I would have to fight this in court. And maybe I could win, maybe I couldn't. That's right. I'm not going to do that. I'm going to give up my right to do that in exchange for you giving me more time to pay this off. And that's the bargain we struck. It has nothing to do with what the underlying loan agreements, whether they were forged or not. And I guess my response, and I should probably sit down because you're making a much better argument than me. I want to hear you. You gave Justice Schuman that. I want to hear you defend it now. What I would say is, in either case, alliance wins. In either case, this court really ought to upheld what Judge said. The problem is we don't have Arizona Supreme Court authority that speaks to this. So that's why I'm wondering, why do we have to get into this? And I'm surprised that here you want to defend the, I have to win on this ratification issue. Why wouldn't you just say, no, I don't, because this is a stand-alone agreement? Let me ask Judge Rothman's question in just a little different way. If we conclude that this acknowledgment, this forbearance agreement, right, is valid, is that sufficient to uphold a district court judgment? Yes. Without going any further? I think so. And to answer your question, Judge Watford, you know, call me old-fashioned, but I like to be belt and suspenders, and I believe you can affirm the district court based solely on the forbearance agreement that was signed, and you can affirm the district court on the ratification principle. And what I want to do is just finish with the three loan theory defense that's everybody's clear what the record says. So Jefferson got all the loan documents. Jefferson got all of the bank statements, and when you look at the bank statements, and that's supplemental excerpt of record 2412 to 2514, you will see on them that every single one of those statements says loan number, it says maturity date, and it tells you how much is owed and when payments were made. And he got all those. There's no dispute about that. In fact, he got it well in advance of signing the forbearance agreement, and he got it because the lawyer for Mr. Jefferson asked for him. So as soon as he asked for him, he got him. There's no evidence of misrepresentation by Alliance Bank in the record at all. And what did he do with them? He gave those documents to his lawyers. The evidence below shows that Mr. Jefferson had a financial advisor that was looking into things dating back to 2012. It shows that he had a forensic accountant on his team dating back to essentially the same time who was going through loan documents. The evidence before Judge Sedgwick showed that Mr. Jefferson, or through his business manager, Mr. Kritzer, provided Jefferson's accountant year in and year out with bank statements and all of the things that were necessary to complete his tax returns. So to come up here and say to you, we didn't know what we were doing, if there's an estoppel to be applied in this case, it ought to be over there. Because the only person, and I don't want to date myself, the only person that Mr. Jefferson didn't have on his team going through these things was Dudley Do-Right of the Canadian Mounted Police. He had the FBI even looking over things. So from a diligence perspective, he got everything he asked for. He didn't ask for anything else when he signed the forbearance agreement. His lawyers could have said, we're signing this agreement, but we're signing it with a reservation of rights because we don't know all the facts. They didn't say that, and they didn't say it because they knew all the facts, and they had every single one of those things. From a getting to whether Judge Sedwick was correct on ratification, and, again, this is belt and suspenders, clearly Arizona has adopted the UCC provision that says, at least for negotiable instruments, a forgery can be ratified. There's no dispute about that. That's the statute. Yes, the statute. The Uniform Commercial Code applies here and applies across the country. The judge also went through and surveyed a number of other cases, and while Arizona Supreme Court has not made a pronouncement on the issue, other than a vague territorial decision that was cited in the pleadings, and I can answer your questions about that, that's not a per se rule about you cannot adopt forgeries. It's a statement that says, if you don't really have the facts and if there's no consideration provided, and neither one of those things is applicable here, we're probably not going to apply ratification, an 1898 decision. There's nothing current in Arizona. That's long prior to the statute. It is. Has there been any cases that indicate the statute would not be applicable to a situation such as this? Well, certainly applicable by analogy. There's no cases that say, in Arizona, that if you have a non-negotiable instrument like was involved here, that ratification would not apply. And what you saw in the briefs from Mr. Jefferson. But there is no case that says it does apply. That's right, Judge. That's what I'm looking for. That's right. But what you do have, and Judge Sedgwick below carefully went through this, was you have the decision of a neighboring state, California, which Arizona will often look to in the absence of law. That's the Rake Straw case of 1972, I believe, which clearly allowed ratification in the context of a promissory note and deed of trust. I don't know why you need more than the statute, lest thus the Supreme Court has put some doubt into your mind. A statute is a statute. It's the law. I don't understand what the problem is. Well, the statute itself technically does not apply to this situation where we're not talking about a negotiable instrument like a check, for example. But certainly it is some evidence of how the Supreme Court would rule of Arizona in a situation like this. And it's interesting. California made the point in that Rake Straw case, in all capitals, the court wrote, that a principal may ratify the forgery of his agent. Below, the judge also cited the Scott v. Erler creative finance case. It's a Montana 2009 decision that surveyed a whole bunch of other states and concluded that the trend and clearly the majority law is if somebody like Mr. Jefferson, with a full set of facts or at least everything that he asked for, signs a forbearance agreement like the one that he signed here, then he has, by golly, ratified and agreed to pay it. And that's exactly what he did here. The only other thing I guess I would cite along those lines is the restatement of agency, Section 91, that we also discussed, which is at some point ratification requires full knowledge. Does that mean divine knowledge? Does that mean some sort of knowledge beyond a shadow of a doubt? No. What it means, especially according to the restatement, is enough knowledge that you, as the person that's going to ratify something, are satisfied you're doing the right thing. And with the troops that Mr. Jefferson had on his team, he clearly knew what he was doing. We would ask that you affirm the decision below. Thank you. All right. Thank you, counsel. Let's give you a minute, two minutes. Let's give you two minutes for rebuttal, whatever you've got to say. Rake straw is a California case. It's in the minority. We cited Williston on contracts and says the common law is generally that you cannot ratify a forgery of a non-negotiable instrument. The statute applies to negotiable instruments. If, by analogy, the court determines that Arizona is likely to use the UCC statute, that to use the UCC statute, even in the case of a non-negotiable instrument, that's not what the court ruled. That's not what the district court ruled. The district court went outside of Arizona to California, to rake straw, and I think it's the Erdley case, which I think cites rake straw. So he was relying on what, according to Williston, is in the minority. My case that I did cite, Your Honors, is old, but there are more recent circuit court opinions that we cited in the briefs that suggest that the non-negotiable ‑‑ that the negotiable instrument statute about ratification does not apply in the non-negotiable context. The Court of Appeals of Arizona? No, Your Honor. I'm sorry. The ‑‑ I think it's the Third Circuit and the ‑‑ Oh, Other Circuit. Yeah, Other Circuit. I apologize. So they found that those statutes pertain only to negotiable instruments and that nothing had changed the law with respect to non-negotiable instruments. Going back to the point Your Honor made earlier, the ratifications in this case were of the underlying loan documents, if there was a ratification, and those loan documents are forged. And so the applicable law about you can't ratify a forgery does apply because without the underlying loan documents, that forbearance agreement, there is nothing to it. I think it incorporates it by reference, if I'm not mistaken. I disagree with you on that because there is something to it. Even if the ‑‑ even if it turns out that you're right on the legal principle that the underlying loan documents, because they were forged, you know, that they couldn't have been enforced against your client, he gave up that right to fight that battle with the bank. And that's ‑‑ and he did it in exchange for consideration. That's why it's an independent agreement. It's not like they're suing just on the underlying loan documents, in which case I think you might have an argument. There's no consideration if the underlying loan documents are not enforceable because the forbearance of an agreement that's invalid is not valid consideration. What the bank said is that we are not going to sue you right this minute, which we could. We could sue you today. Now, we don't know who would win, but we could go into court right now and drag you through expensive litigation. We are not going to do that for at least another month in exchange for your agreeing not to fight us on whether you owe the money. But at the same time they were asserting that, they were saying we're going to sue you on this 4825 loan, the original one, because it's one long, continuous loan. They make that representation at the same time that they are holding back the document that shows that that note was paid off. You can't obtain ratification on those grounds. Okay. Further questions, Your Honor? Thank you very much. Thank you for your argument. Our case just argued will be submitted.
judges: Wallace, Tashima, Watford